UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------ X
BARRY FRIEDLAND,

          Plaintiff,

   -against-

UBS AG,

          Defendant.
------------------------------------------------------------ X

**MEMORANDUM AND ORDER**

16 Civ. 687 (VMS)

**VERA M. SCANLON, United States Magistrate Judge:**

Before the Court is Defendant's motion to dismiss with prejudice Plaintiff's complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) or, in the alternative, for summary judgment pursuant to Rule 56.  For the reasons stated herein, Defendant's motion is **granted** in part and **denied** in part.  The Court dismisses the complaint and will permit Plaintiff 30 days from the date of this Order to replead his claims in terms of the Employment Retirement Income Security Act, 29 U.S.C. §§ 1001-1461.

**I.    BACKGROUND**

    **A.  Procedural Background**

On January 6, 2016, plaintiff Barry Friedland ("Plaintiff") commenced this action by filing his complaint in the Supreme Court of New York, asserting state-law claims for fraud, breach of contract and unjust enrichment.  Def.'s Notice of Removal Ex. A: Complaint ¶¶ 16-30, ECF No. 1 [hereinafter Complaint, ECF No. 1].  On February 9, 2016, Defendant UBS AG ("Defendant") timely removed the action pursuant to 28 U.S.C. §§ 1441 and 1446.  See Notice of Removal, ECF No. 1.  Defendant wrote to the Court requesting a conference and indicating its intention to move for dismissal of the complaint on the grounds of preemption by the

1

Employment Retirement Income Act ("ERISA"), 29 U.S.C. §§ 1001-1461.  Def.'s Letter to Req. Conference, ECF No. 11.  In an initial conference with this Court, Defendant agreed for Plaintiff to be granted leave to amend his complaint to include ERISA claims.  See 03/17/2016 Order, ECF No. 12.  Plaintiff agreed to do so by May 13, 2016.  Id.  Plaintiff had legal representation in and prior to this initial conference, but he subsequently discharged counsel and has since proceeded pro se.  On May 11, 2016, Plaintiff's counsel wrote to the Court requesting a conference and indicating his intention to move to withdraw as attorney of record.  Pl.'s Att'y Letter to Req. Conference, ECF No. 13.  On May 12, 2016, Plaintiff moved this Court for an extension to file his amended complaint.  Pl.'s Mot. for Extension, ECF No. 15.  The Court held a second conference on June 10, 2016, during which Plaintiff explained that his relationship with his attorney had deteriorated and that he wished to retain other counsel.  The Court granted the motion to withdraw as attorney of record and stayed the case to provide Plaintiff opportunity to retain other counsel and file his amended complaint with ERISA claims.  See 06/10/2016 Order, ECF No. 17.  The Court held a third conference on August 17, 2016.  Plaintiff explained at this conference that he had been unable to retain other counsel in part due to financial reasons.  The Court explained to Plaintiff what ERISA preemption would mean for his state-law claims if it were to apply and the significance of Defendant's intention to move for dismissal of the complaint.  Defendant indicated that it was not interested in mediating the claim but was, in the event that Plaintiff retained counsel, willing to meet with Plaintiff and counsel to discuss the preemption issue and the underlying merits of the case.  Defendant also offered to either withhold its motion to dismiss to allow Plaintiff more time to seek counsel or to proceed to file the motion.  Plaintiff preferred for Defendant to proceed to file the motion, which Plaintiff could

then take to prospective counsel to help explain the issues and facilitate consultation or, alternatively, oppose in his pro se capacity.

Defendant filed its motion to dismiss on July 26, 2017. Def.'s Mot. to Dismiss, ECF No. 26. Plaintiff, still acting pro se, opposed Defendant's motion on August 9, 2017. See Pl.'s Opp'n to Def.'s Mot. to Dismiss, ECF No. 34. Defendant replied on October 6, 2017. Def.'s Reply to Pl.'s Opp'n to Def.'s Mot. to Dismiss, ECF No. 33. On August 26, 2017, the parties consented for this Court to conduct all proceedings and enter final judgment in this case. Notice, Consent, and Reference of a Civil Action to a Magistrate Judge, ECF No. 20. The District Judge approved the consent. Id.

### B. Factual Background

The following information is, unless otherwise indicated, derived from the complaint and is presented in the light most favorable to Plaintiff. See In re Thelen LLP, 736 F.3d 213, 218 (2d Cir. 2013) (on a motion to dismiss, a court must "accept all factual allegations in the complaint as true and draw all reasonable inferences in plaintiff's favor").

Plaintiff worked for Dillon, Read & Co., Inc. ("Dillon Read") and participated in the company's pension plan. See Complaint ¶¶ 3-4, ECF No. 1. Defendant later acquired the successor to Dillon Read and Plaintiff's pension plan with Dillon Read merged with Defendant's pension plan (the "Plan"). See Complaint ¶¶ 6-7, ECF No. 1.

Plaintiff incorporates into his complaint a letter from Defendant to him dated September 23, 2009. See Complaint ¶ 7, ECF No. 1 making reference to Def.'s Mot. to Dismiss Ex. F, ECF No. 26; Sira v. Morton, 380 F.3d 57, 67 (2d Cir. 2004) ("A complaint is deemed to include . . . materials incorporated in it by reference."). The letter explained:

> In response to your [Plaintiff's] request, we have reviewed your benefit calculation detail. This review has resulted in Hewitt

3

> confirming that we calculated your accrued benefit correctly (i.e., your total annual pension paid as a single life annuity as of 9/30/1997, $7830.47/year.)  However, we converted your annual single life annuity to the Level Income Option form of payment incorrectly.

The letter went on to provide that Defendant would pay Plaintiff a lump sum to make up for the prior underpayments and adjust his future payments to the correct amount.  Finally, the letter stated:

> Note that since you elected the Level Income form of payment, your pension payment from the plan will change when you reach age 62. Your pension benefit will decrease by the Social Security offset used in calculating your Level Income option.  Since your Social Security offset is greater than your Single Life Annuity, your payment at age 62 will be $0.00.

Plaintiff also incorporates into his complaint, again by reference, two agreements between him and Defendant.  The first, signed on August 2, 2010 (the "August Agreement"), says that it is a settlement of "all claims [Plaintiff has] including, but not limited to, claims concerning the calculation and amount of his entire pension benefit."  See Complaint ¶ 8, ECF No. 1, making reference to Def.'s Mot. to Dismiss Ex. G, ECF No. 26.  The August Agreement provides that Plaintiff will receive "an annual pension benefit of $7,830.47, payable as a life annuity . . . which commenced on October 1, 2007" and a "single lump-sum payment of $10,000."  Def.'s Mot. to Dismiss Ex. G ¶ 1(i), ECF No. 26.  It says that Plaintiff agrees that those payments "in the aggregate equal the entire amount of his benefit entitlement under the UBS Pension Plan."  Id.  The August Agreement does not make any explicit reference to the point at which Plaintiff would stop receiving benefits.

The August Agreement also provided that Plaintiff had until September 30, 2010, to produce evidence showing that Defendant had miscalculated the amount of his annual pension

4

entitlement.  Id.  Plaintiff pursued this option, which led to the second agreement, signed on November 30, 2010 (the "November Agreement"), under the terms of which Defendant would pay Plaintiff another lump sum of $4,000 to settle their disagreement regarding the amount of Plaintiff's pension entitlement.  See Complaint ¶ 11, ECF No. 1, making reference to Def.'s Mot. to Dismiss Ex. H, ECF No. 26.  The November Agreement, like the August Agreement, also provided that the annual payment amount and lump sum payment "in the aggregate equal the entire amount of his benefit entitlement under the UBS Pension Plan."  Id. ¶ 1.  Unlike the August Agreement, the November Agreement was explicit about when Plaintiff would stop receiving benefits, it described his annual pension benefit as "payable as the Age 62 Level Income Option . . . until [he] attains the age 62, at which point his benefit will be offset entirely by Social Securities benefits and thus be reduced to zero."  Id. ¶ 1(i).  The November Agreement is silent as to whether its terms supersede or supplement, or how they otherwise relate to, the terms of the August Agreement if and to the extent to which those terms differ.

Plaintiff contends that:

- The August Agreement requires Defendant to pay his benefits for the duration of his life.  See Complaint ¶¶ 9, 13, ECF No. 1.
- The November Agreement "provided that, contrary to the August Agreement, Plaintiff's pension payment would cease when he turned 62."  Id. ¶ 13.
- Defendant "tricked" him into signing the November Agreement and he "did not understand that he was signing away his pension."  Id. ¶ 14.

The entirety of Plaintiff's opposition to Defendant's motion to dismiss consisted of a copy of the August Agreement and a cover page on which was written "The enclosed complete

5

settlement contract is the proof and must be enforced dated Aug 15, 1995 for receiving my pension for life!" Pl.'s Opp'n to Def.'s Mot. to Dismiss, ECF No. 34.

## II. ANALYSIS

Defendant moves this Court to dismiss with prejudice Plaintiff's entire complaint. Defendant argues first that the Employment Retirement Income Security Act preempts Plaintiff's state-law claims and, in the alternative, that the complaint fails to plead actionable claims under state-law. Because the Court concludes that ERISA preempts Plaintiff's state-law claims, it does not need to address the second argument, but will grant Plaintiff a final opportunity to replead ERISA claims within 30 days of the date of this Order.

### A. ERISA preemption

ERISA was enacted to "protect . . . participants in employee benefit plans and their beneficiaries . . . by providing for appropriate remedies, sanctions, and ready access to the Federal courts." 29 U.S.C. § 1001(b). ERISA creates a comprehensive civil enforcement scheme that preempts any state-law cause of action that "duplicates, supplements, or supplants" an ERISA remedy. Aetna Health Inc. v. Davila, 542 U.S. 200, 209 (2004). If ERISA preempts a state-law claim, the claim is "in reality based on federal law" and therefore does not truly exist as a state-law claim. Id. at 208 (internal citation omitted). For this reason, ERISA preemption means that a plaintiff does not have state-law claims.

Section 502(a)(1)(B) of ERISA provides that a plan participant or beneficiary may bring a civil action "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of his plan, or to clarify his rights to future benefits under the terms of his plan." ERISA § 502, 29 U.S.C. § 1132 (2012). Regardless that Plaintiff pleads his claims in terms of state law, ERISA completely preempts them if they fall within the scope of section 502(a)(1)(B).

6

Davila, 542 U.S. at 207-08. The Supreme Court of the United States has developed a test, known as the "Davila test," by which to determine if a claim falls within the scope of section 502(a)(1)(B). Id. at 210. The Davila test provides that claims fall within the scope of section 502(a)(1)(B) if "at some point in time [the plaintiff] could have brought his claim under" section 502(a)(1)(B), and if the defendant's actions do not implicate any other independent legal duty. Id. The Second Circuit Court of Appeals has clarified that the first prong of this test contains two steps: first, whether the plaintiff is the type of party that can bring a claim pursuant to section 502(a)(1)(B), and, second, whether the plaintiff's claims can be construed as colorable claims for benefits pursuant to section 502(a)(1)(B). See Montefiore Med. Ctr. v. Teamsters Local 272, 642 F.3d 321, 328 (2d Cir. 2011).

The Second Circuit Court of Appeals has further clarified the second step of the first prong of the Davila test by distinguishing claims that pertain to the "right to payment" and those that pertain to the correct "amount of payment." I.d., at 331. Right-to-payment claims "implicate coverage and benefits established by the terms of the ERISA benefit plan" and can be brought in terms of section 502(a)(1)(B). I.d. Amount-of-payment claims implicate the computation or execution of contract claims (i.e., the timeliness or proper form of payments) and cannot be brought in terms of section 502(a)(1)(B). Id.

In assessing the second prong of the Davila test, a court must determine if the defendant's actions implicate any other independent legal duty. Id. at 332 ("The key words [in the second prong of the Davila test] are 'other' and 'independent.'"). In Stevenson v. Bank of New York Co., 609 F.3d 56 (2d Cir. 2010), the defendant had promised to maintain the plaintiff's benefits under an ERISA pension plan even after the plaintiff left the defendant's employment. The Court held that the plaintiff's complaint did not "derive from the particular rights and obligations

7

established by [any] benefit plan . . . but rather from a separate promise that references various benefit plans." Id. at 60-61 (quoting Davila, 542 U.S. at 213-14 (internal quotation marks & citations omitted).  In other words, the plaintiff's claims were not about his rights under the ERISA plan; indeed, plaintiff did not have rights under the ERISA plan—his rights instead arose from an independent agreement that merely used the ERISA plan as a benchmark to determine his benefits.  The Second Circuit Court of Appeals therefore held that ERISA did not preempt the plaintiff's state-law claims.  In Arditi v. Lighthouse Int'l, 676 F.3d 294 (2d Cir. 2012), as amended (Mar. 9, 2012), in contrast, the plaintiff left and later returned to the defendant's employment.  The agreement at issue provided that the plaintiff would rejoin his employer's ERISA plan upon reemployment.  The agreement described the benefits that plaintiff would acquire upon rejoining the plan and was explicit that plaintiff's rights arose from and were governed by that plan.  Id. at 300-01.  The Second Circuit Court of Appeals held that the agreement merely described the benefits that the plaintiff would receive in terms of the ERISA plan and made no promises other and independent from the benefits under that plan.  The Court therefore held that ERISA preempted plaintiff's state-law claims.

### B. Application

There is no dispute that Plaintiff is a Plan beneficiary and satisfies the first step of the first prong of the Davila test.  As to the second step, Plaintiff's claims pertain to his right to benefits under the Plan.  Both the August Agreement and November Agreement are explicit that the rights and benefits to which they refer arise from the Plan.  For example, the first clause of each agreement says that the payments they describe "equal the entire amount of [Plaintiff's] entitlement benefit under the UBS Pension Plan."  Def.'s Mot. to Dismiss Ex. G-H, ECF No. 26.  Plaintiff's claims therefore relate to his coverage and eligibility for benefits established in the

Plan and are right-to-payment claims. For these reasons, Plaintiff's claims can be construed as colorable claims for benefits pursuant to section 502(a)(1)(B) and satisfy the second step of the first prong of the Davila test.

As to the second prong of the Davila test, Plaintiff asserts that the August Agreement entitles him to receive benefits for the rest of his life. The Court, therefore, must determine whether the August Agreement creates a legal duty that is "other" than and "independent" from Defendant's duties in terms of ERISA. Montefiore Med. Ctr., 642 F.3d at 332. The Court infers from the complaint that Plaintiff's position may be based on language in the August Agreement describing his Plan benefit as "an annual pension benefit of $7,830.47 payable as a life annuity." Def.'s Mot. to Dismiss Ex. G ¶ 1(i), ECF No. 26. If this is indeed Plaintiff's position, resolution of Plaintiff's claims may require reference to the terms of the August Agreement. This alone, however, does not mean that the August Agreement creates an independent legal duty.

This case is more like Arditi than Stevenson. Here, as in Arditi, resolution of the dispute may require reference to the agreements between Plaintiff and Defendant but only to the extent that the agreements clarify the Plan benefits to which Plaintiff is entitled. Unlike in Stevenson and like in Arditi, Plaintiff has rights in terms of the Plan and the agreements are explicit that Plaintiff's rights arise from and are governed by the Plan. The agreements merely describe the Plan benefits due to Plaintiff. Plaintiff's claims therefore satisfy the second prong of the Davila test, and ERISA preempts them.

## III. CONCLUSION

Although Plaintiff had legal representation when he filed his complaint and in the initial conference with this Court, he now acts pro se. This Court and Defendant made Plaintiff aware of ERISA preemption, and the Court provided him opportunity to amend his complaint. See

9

03/17/2016 Order, ECF No. 12; Def.'s Letter to Req. Conference, ECF No. 11.  Plaintiff did not amend his complaint; he instead filed opposition to Defendant's motion to dismiss.  Still, it would be understandable if Plaintiff, especially as a pro se litigant, were confused as to this outcome.  Federal preemption is not a doctrine likely to leave a pro se litigant with an intuitive sense that his problem has been heard, understood and fairly handled.  From the perspective of Plaintiff, it may seem that this Court's analysis has nothing to do with his underlying problem.

      The Court dismisses the complaint, but will permit Plaintiff 30 days from the date of this Order to replead his claims in terms of the Employment Retirement Income Security Act, 29 U.S.C. §§ 1001-1461.  Plaintiff is advised that if he fails to amend his complaint to add ERISA claims, he may be barred from raising any legal claims as to his pension in the future.  The Court will mail a copy of this Order to Plaintiff at 229 96th St., Brooklyn, New York 11209.

Dated: Brooklyn, New York
       December 4, 2017

*Vera M. Scanlon*
VERA M. SCANLON
United States Magistrate Judge