```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------ x
BARRY FRIEDLAND,                              :
                                              :
                     Plaintiff,               :
                                              :               **MEMORANDUM & ORDER**
           -against-                          :
                                              :               16 Civ. 687 (VMS)
UBS AG,                                       :
                                              :
                     Defendant.               :
------------------------------------------------------------ x
```

**VERA M. SCANLON, United States Magistrate Judge:**

Presently before the Court is Defendant UBS AG's motion to dismiss Plaintiff Barry Friedland's Amended Complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure or, in the alternative, for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. For the reasons set forth below, the Court treats Defendant's motion as one for summary judgment and grants summary judgment for Defendant. The Clerk of Court is directed to enter judgment in favor of Defendant and close the case.

**I.     BACKGROUND**

   **A.  Facts**

In support of its motion, Defendant submitted a declaration from counsel, ECF No. 26-3, annexing copies of the following documents referenced below: (1) UBS AG's Pension Plan (the "UBS Plan" or "Plan"), ECF No. 26-4 at 18-188[1]; (2) the Revised Retirement Income Plan for Employees of Dillon, Read & Co., Inc. (the "Dillon Read Plan"), ECF No. 26-4 at 190-296; (3) the Pension Plan Pension Election Authorization Form signed by Plaintiff on July 23, 2007 (the

---

[1] Because the documents were filed together under the same docket entry, ECF No. 26-4, the Court notes the page range where each document appears within that docket entry, using the pagination generated by the ECF system. For consistency, the Court will use ECF pagination throughout this Memorandum & Order when citing the page of any of these documents.

"Election Form"), ECF No. 26-4 at 298; (4) the Pension Plan Pension Informational Notice to Plaintiff, dated September 23, 2009 (the "September 2009 Letter"), ECF No. 26-4 at 300; (5) the General Release, Covenant Not To Sue And Confidentiality Agreement signed by Plaintiff on August 2, 2010 (hereinafter, the "August 2010 Agreement"), ECF No. 26-4 at 302-08; (6) the General Release, Covenant Not To Sue And Confidentiality Agreement signed by Plaintiff on November 22, 2010 (hereinafter, the "November 2010 Agreement"), ECF No. 26-4 at 310-16; and (7) the September 28, 2015 administrative appeal decision by the UBS Retirement Board (the "Plan Administrator Decision"), ECF No. 26-4 at 318-22. The following facts are drawn from the Amended Complaint and the foregoing documents, the authenticity of which Plaintiff does not dispute.

Plaintiff Barry Friedland ("Plaintiff" or "Mr. Friedland") is a former employee of Dillon, Read & Co., Inc. ("Dillon Read") who participated in a pension plan maintained by Dillon Read (the "Dillon Read Plan"). See Amended Complaint ¶¶ 6-7, ECF No. 42. Defendant UBS AG ("Defendant" or "UBS") later acquired the successor to Dillon Read and the Dillon Read Plan merged into UBS AG's pension plan (the "UBS Plan" or "Plan"). Id. ¶¶ 8, 12; see UBS Plan § 1.1. Under the Plan, a participant's accrued pension benefit is determined as a "single life annuity," meaning an annuity providing equal monthly payments for the lifetime of the participant with no survivor benefits, commencing at the participant's "normal retirement age," defined as age 65. See Dillon Read Plan §§ 1.4, 1.28, 4.1, 6.1; UBS Plan §§ 2.1(a), 2.1(cc), 2.1(ll), 4.1(a). Plaintiff's accrued pension benefit, stated as a single life annuity beginning at his normal retirement age, was calculated to be $7,830.47 annually. See September 2009 Letter, ECF No. 26-4 at 300. Had Plaintiff elected to receive his accrued pension benefit under this form of payment, he would have received $652.54 per month ($7,830.47 / 12) beginning in

October 2017, upon reaching age 65.

The Plan also offers an alternative, optional form of accrued benefit payment, the "Level Income Age 62 Option," that a participant could elect in lieu of payment as a single life annuity beginning at age 65.  Dillon Read Plan §§ 3.2, 6.4; UBS Plan § 6.3.  Under the Level Income Age 62 Option, a participant receives a larger monthly payment starting as early as age 55, and continuing until age 62, the age of Social Security benefit eligibility, at which point the monthly pension benefit payments are reduced, potentially to zero, and are offset by Social Security payments.  Dillon Read Plan § 6.4; UBS Plan § 6.3.  Under the Plan, and as required by ERISA, the amount payable to a Plan participant under the Level Income Age 62 Option must be of "actuarially equivalent" value to the amount that would be paid as a single life annuity commencing at age 65.  See Dillon Read Plan §§ 1.6, 6.5; UBS Plan § 6.3(a).  The Level Income Age 62 Option seeks to help ensure Plan participants a retirement income floor.

On July 23, 2007, Plaintiff signed the Election Form by which he elected to begin receiving his pension benefit on October 1, 2007, upon reaching the age of 55, under the Level Income Age 62 Option.  See Election Form, ECF No. 26-4 at 298.  Plaintiff's pension calculation was reviewed in 2009, resulting in the September 2009 Letter to Plaintiff, which stated:

> We calculated your accrued benefit correctly (i.e., your total annual pension paid as a single life annuity as of 9/30/1997, $7830.47/year).  However, we converted your annual single life annuity to the Level Income Option form of payment incorrectly.  Your monthly annuity under this optional form of payment was quoted as $721.60 as of October 1, 2007; it should be $750.51.  This resulted in you receiving $28.91 less then you should have, for 25 months.  This error was caused by a data entry error.  We certainly apologize for this.
>
> Starting on November 1, 2009, you will begin receiving the correct monthly annuity, $750.51.  In addition, you will also receive a one-time payment of $722.75 to make up for the under-payment from October 1, 2007 through October 31, 2009.  This one-time payment has been determined as follows: ($750.51 - $721.60 x 25 months).  Again we apologize for any inconvenience this may have caused.

3

> Note that since you elected the Level Income form of payment, your pension payment from the plan will change when you reach age 62. Your pension benefit will decrease by the Social Security offset used in calculating your Level Income option. Since your Social Security offset is greater than your Single Life Annuity, your payment at age 62 will be $0.00.

September 2009 Letter, ECF No. 26-4 at 300.

The following year, Plaintiff and UBS entered into the August 2010 Agreement, which, as explained in the Plan Administrator's Decision discussed below, resolved claims raised by Plaintiff regarding whether he received proper notice of the merger of the Dillon Read Plan into the UBS Plan. See August 2010 Agreement, ECF No. 26-4 at 302-08; Plan Administrator Decision, ECF No. 26-4 at 318-22. Section one of the August 2010 Agreement provided that Plaintiff and UBS "agree as follows":

> 1. Under the UBS Pension Plan, into which the Revised Retirement Income Plan for Employees of Dillon, Read & Co., Inc. (the "Dillon Read Pension Plan") was merged, Friedland is entitled to receive the following benefits, which Friedland agrees and represents, in the aggregate, equal the entire amount of his benefit entitlement under the UBS Pension Plan:
>
> (i) <u>Dillon Read Benefit</u>. An annual pension benefit of $7,830.47, payable as a life annuity (the "Dillon Read Benefit"), which commenced on October 1, 2007. Friedland acknowledges and agrees that the Dillon Read Benefit reflects all benefits accrued by Friedland under the Dillon Read Pension Plan from Friedland's date of hire through the date benefit accruals were frozen under the Dillon Read Pension Plan on September 30, 1997. Friedland further acknowledges and agrees that, for purposes of calculating the Dillon Read Benefit, the amount of Friedland's Compensation (as such term is defined in the UBS Pension Plan) for the 1992 Plan year (the "1992 Compensation") has been determined correctly, unless he produces proof satisfactory to the Retirement Board (as such term is defined in the UBS Pension Plan) by September 30, 2010 that his 1992 Compensation was a different amount (the "Revised Amount"). The Dillon Read Benefit has been calculated as a single life annuity form of payment and;
>
> (ii) <u>Lump Sum Payment</u>. A single lump-sum payment of $10,000.00 (the "Lump Sum Payment"), payable on the Effective Date (as defined herein).

August 2010 Agreement § 1. Subsection (i), the August 2010 Agreement preserved Plaintiff's right to seek a recalculation of his pensionable compensation for the "1992 Plan year"

4

(hereinafter, the "Compensation Calculation Claim") by submitting documents to the Retirement Board, which is designated under the Plan to function as the Plan Administrator. Id. § 1(i); see id. § 4(a) (setting forth that if Plaintiff provided the Retirement Board satisfactory proof of his entitlement to an upward revision of his compensable income by September 30, 2010, the Dillon Read Benefit would be revised accordingly, and Plaintiff's release and discharge with respect to the Compensation Calculation Claim would become effective only after that issue was resolved).

Plaintiff pursued the Compensation Calculation Claim preserved in the August 2010 Agreement, and entered into the November 2010 Agreement with UBS. See November 2010 Agreement, ECF No. 26-4 at 310-16. Section one of the November 2010 Agreement provided that Mr. Friedland and UBS "agree as follows":

> 1. Under the UBS Pension Plan, into which the Revised Retirement Income Plan for Employees of Dillon, Read & Co., Inc. (the "Dillon Read Pension Plan") was merged, Friedland is entitled to receive the following benefits, which Friedland agrees and represents, in the aggregate, equal the entire amount of his benefit entitlement under the UBS Pension Plan:
>
> (i) <u>Dillon Read Benefit</u>. An annual pension benefit of $7,830.47, payable as the Age 62 Level Income Option (the "Dillon Read Benefit"), which commenced on October 1, 2007, providing a monthly benefit of $750.51 until Mr. Friedland attains age 62, at which point his benefit will be offset entirely by Social Securities benefits and thus be reduced to zero. Friedland acknowledges and agrees that the Dillon Read Benefit reflects all benefits accrued by Friedland under the Dillon Read Pension Plan from Friedland's date of hire through the date benefit accruals were frozen under the Dillon Read Pension Plan on September 30, 1997. Friedland further acknowledges and accepts the amount of Friedland's Compensation (as such term is defined in the UBS Pension Plan) for the 1992 Plan year (the "1992 Compensation") that UBS used for purposes of calculating the Dillon Read Benefit. The Dillon Read Benefit has been calculated as a single life annuity form of payment and;
>
> (ii) <u>Lump Sum Payment</u>. A single lump-sum payment of $4,000.00 (the "Lump Sum Payment"), payable on or about thirty (30) days, or as soon thereafter as administratively practicable, after the Effective Date (as defined herein) of this Agreement . . . .

Id. § 1.

Of particular relevance to this case are the descriptions of the "Dillon Read Benefit" in the August 2010 Agreement and November 2010 Agreement. In the August 2010 Agreement, the "Dillon Read Benefit" is described as: "[a]n annual pension benefit of $7,830.47, payable as a life annuity, . . . which commenced on October 1, 2007." August 2010 Agreement § 1(i). The November 2010 Agreement describes the "Dillon Read Benefit" as: "[a]n annual pension benefit of $7,830.47, payable as the Age 62 Level Income Option . . . which commenced on October 1, 2007, providing a monthly benefit of $750.51 until Mr. Friedland attains age 62, at which point his benefit will be offset entirely by Social Securities benefits and thus be reduced to zero." November 2010 Agreement § 1(i).

According to Plaintiff's own allegations, the August 2010 Agreement's purpose was not to change his election or provide him a second payment of his pension. Plaintiff refers to the August 2010 Agreement as "memorializing the terms of the[] agreement concerning the miscalculated benefits" addressed in the September 2009 Letter, Amended Complaint ¶ 12, or, alternatively, as "memorializ[ing]" his "right to benefits under the pension plan," id ¶ 20.

In 2015, Plaintiff filed an administrative claim and appeal under the Plan, arguing: (1) that the November 2010 Agreement was void and unenforceable due to the absence of a signature by Plaintiff's counsel on the agreement and the alleged lack of Plaintiff's initials on each page of the agreement; and (2) that Plaintiff was entitled under the August 2010 Agreement to "a life annuity rather than an age 62 level income form of payment." See Plan Administrator Decision, ECF No. 26-4 at 318. By decision dated September 18, 2015, the Plan Administrator denied Plaintiff's appeal, concluding that Plaintiff's accrued pension benefit correctly was paid under the Level Income Age 62 Option he had elected in 2007. See id.

6

The Plan Administrator first addressed and rejected Plaintiff's contention that the November 2010 Agreement was void and unenforceable, noting the following facts:

- The November [2010] Agreement bears a signature indicating that it was signed by Mr. Friedland and a notary public qualified in New York signed the agreement indicating that the notary witnessed Mr. Friedland sign the agreement.

- Contrary to Mr. Friedland's assertion, the November [2010] Agreement has initials signed on each page of the agreement.

- The November [2010] Agreement provides for a single lump sum payment of $4,000.[00] to Mr. Friedland. Our records show that the $4,000[.00] was paid to Mr. Friedland on December 8, 2010 via check and that the check was deposited on December 15, 2010.

- The Plan's records include an email from [Plaintiff's attorney at the time] to UBS dated October 14, 2010 in which [the attorney] indicates that Mr. Friedland would settle his dispute for $4,000[.00]. [The attorney] points out [in the email] that Mr. Friedland is receiving a monthly pension benefit payable through Sept[ember] 30, 2014 and the $4,000 would be on top of the monthly payment.

Id. at 320-21. The Plan Administrator noted that under New York law, which governs the August 2010 Agreement and November 2010 Agreement, see August 2010 Agreement § 15; November 2010 Agreement § 15, a party to an agreement need not sign the agreement for it to be valid, there is no requirement that counsel for a party must sign the agreement, and there is no requirement that each page of an agreement must be initialized. Id. at 320. Based on the foregoing facts and law, the Plan Administrator concluded that the November 2010 Agreement is a valid agreement. Id. at 320-21.

Further, the Plan Administrator found that neither the August 2010 Agreement nor the November 2010 Agreement changed Plaintiff's form of benefit payment. Id. at 321. In this respect, the Plan Administrator noted (1) that Plaintiff had elected to receive his Plan benefit in the form of a the Level Income Age 62 option commencing on October 1, 2007, (2) that the September 2009 Letter made clear to Plaintiff that payments under his elected option would be

7

reduced to $0.00 when Plaintiff reached age 62 due to Social Security offsets, and (3) that the November 2010 Agreement "simply reinforced and made clear that the benefit to [Plaintiff] was payable as an Age 62 Level Income Benefit which would end in September 2014." Id. The Plan Administrator noted that Plaintiff "continuously was paid a monthly benefit of $750.51 both immediately before and after those agreements." Id. The Plan Administrator did not address the purpose, if any, of Section 1(i) of the August 2010 Agreement.

### B. Procedural History

This action was originally brought by Plaintiff in the New York State Supreme Court, Kings County, asserting state-law claims for fraud, breach of contract and unjust enrichment, and it was subsequently removed by Defendant pursuant to 28 U.S.C. §§ 1441 and 1446. See Complaint, ECF No. 1-1. Plaintiff had legal representation when he commenced this action, but he discharged his counsel following the initial conference. See ECF No. 13 (motion to withdraw as attorney); ECF No. 17 (Order granting motion to withdraw as attorney). By Memorandum and Order dated December 4, 2017, ECF No. 39, the Court granted Defendant's motion to dismiss the original Complaint on the grounds of preemption by the Employment Retirement Income Act ("ERISA"), 29 U.S.C. §§ 1001-1461. See Friedland v. UBS AG, No. 16 Civ. 687 (VMS), 2017 WL 6001769 (E.D.N.Y. Dec. 4, 2017). Although Plaintiff had previously been afforded an opportunity to amend his complaint, the Court granted Plaintiff leave to replead his claims under ERISA in light of his pro se status. Id.

Plaintiff subsequently filed his Amended Complaint asserting a single cause of action, under ERISA § 502(a)(1)(B), "to recover benefits under an employee benefit plan." See Amended Complaint ¶ 1, ECF No. 42. Specifically, Plaintiff alleges in the Amended Complaint that he "understood, by executing the August [2010] Agreement, that his annual pension benefit

8

would continue for the remainder of his life, regardless of his qualification for Social Security when he turned 62." Id. ¶ 16.

Defendant has moved to dismiss the Amended Complaint under Federal Rule of Civil Procedure ("FRCP") 12(b)(6) or, in the alternative, for summary judgment pursuant to FRCP 56. See ECF No. 47. In support of Defendant's motion, as stated in its notice of motion, Defendant relies on its Statement of Undisputed Material Facts Pursuant to FRCP 56 and Local Rule 56.1 ("56.1 Statement"), and the documents filed at 26-4, discussed above, which were previously filed by Defendant in connection with its motion to dismiss the original Complaint. See Notice of Motion, ECF No. 47. Defendant served the foregoing documents on Plaintiff at the time of its motion against the original Complaint, and again in connection with the motion currently before the Court. Defendant also served on Plaintiff the statement that Local Civil Rule 56.2 requires be served on pro se litigants against whom summary judgment is sought. Plaintiff filed a one-page opposition, in which he states: "I have a signed, legal contract with the Defendant. Based on my understanding, nothing can override that contract. The lawyers for both sides signed it. I want to make sure that the Court looks at the contract, which is the final word on the matter." See ECF No. 46. Although not specified by Plaintiff, the Court construes the contract referenced in Plaintiff's opposition to be the August 2010 Agreement. Defendant submitted a reply in further support of its motion. See ECF No. 47-2.

The Parties have consented for this Court to conduct all proceedings and enter final judgment in this case. See Notice, Consent, and Reference of a Civil Action to a Magistrate Judge, ECF No. 20. The District Judge approved the consent. Id.

## II. DISCUSSION

### A. Conversion To Summary Judgment

On a motion to dismiss pursuant to FRCP 12(b)(6), a court accepts as true all well-pleaded factual allegations and draws all reasonable inferences in favor of the non-moving party, Montero v. City of Yonkers, 890 F.3d 386, 391 (2d Cir. 2018), but it gives "no effect to legal conclusions couched as factual allegations," Stadnick v. Vivint Solar, Inc., 861 F.3d 31, 35 (2d Cir. 2017). To withstand a motion to dismiss, a pleading "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). In considering a motion to dismiss under FRCP 12(b)(6), the court is limited to the factual allegations in the complaint and documents attached thereto, as well as documents incorporated in the complaint by reference and those of which the plaintiff had knowledge and relied upon in commencing the action. See Brass v. Amer. Film Techn., Inc., 987 F.2d 142, 150 (2d Cir. 1993).

Defendant has submitted certain documents that Plaintiff incorporated into the Amended Complaint by reference, such as the Dillon Read Plan, UBS Plan, September 2009 Letter, August 2010 Agreement and November 2010 Agreement, as well as other documents that Plaintiff can fairly be said to have relied on in bringing suit, such as the Plan Administrator Decision. Defendant has also submitted documents that fall outside those categories, such as a document showing the conversion of Plaintiff's single life annuity into a Level Income Age 62 payment option, ECF No. 26-4 at 324, and a document showing the history of the pension payments made to Plaintiff under the Plan, ECF No. 26-4 at 326.

When presented with materials outside the pleadings on a motion to dismiss pursuant to FRCP 12(b)(6), the Court must either "exclude the additional material and decide the motion on

the complaint alone" or "convert the motion to one for summary judgment under [FRCP] 56 and afford all parties the opportunity to present supporting material." Friedl v. City of N.Y., 210 F. 3d 79, 83 (2d Cir. 2000); see FRCP 12(d). In determining whether conversion is appropriate, "[t]he essential inquiry is whether the [nonmovant] should reasonably have recognized the possibility that the motion might be converted into one for summary judgment or was taken by surprise and deprived of a reasonable opportunity to meet facts outside the pleadings." In re G. & A. Books, Inc., 770 F.2d 288, 295 (2d Cir. 1985).

Here, Defendant's notice of motion expressly states that Defendant is moving for summary judgment as an alternative to dismissal, see Nat'l Assoc. of Pharm. Mfrs., Inc. v. Ayerst Labs., 850 F.2d 904, 911 (2d Cir. 1988) (pro se non-movant on notice of conversion where motion was styled as a "motion to dismiss or, in the alternative, for summary judgment"), and states that, in support of its motion, Defendant would rely on the above-referenced documents and Rule 56.1 Statement. Defendant served Plaintiff copies of the documents and 56.1 Statement with its prior motion and again in connection with the current motion. Defendant also served on Plaintiff the statement that Local Civil Rule 12.1 requires be served to a pro se litigant when a represented party moving to dismiss or for judgment on the pleadings has submitted evidence outside the pleadings, and the statement that Local Civil Rule 56.2 requires be served on pro se litigants against whom summary judgment is sought. As Plaintiff had sufficient notice of the possibility that Defendant's motion might be treated by the Court as a motion for summary judgment, and he had a reasonable opportunity to present supporting material, the Court will consider Defendant's motion as one brought for summary judgment under FRCP 56.

On a motion for summary judgment, the moving party has the burden of establishing that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FRCP 56(a); Anderson v. Libery Lobby, Inc., 477 U.S. 242, 247-48 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The Court resolves "all ambiguities and draw[s] all factual inferences in favor of the party opposing the motion[,]" reading "pleadings of a pro se plaintiff liberally and interpret[ing] them to raise the strongest arguments that they suggest." McPherson v. Coombe, 174 F.3d 276, 280 (2d Cir. 1999) (internal quotation marks omitted).

### B. Standard Of Review Applicable To Denial Of ERISA Benefits

Pursuant to ERISA § 502(a)(1)(B), codified at 29 U.S.C. § 1132(a)(1)(B), a participant or beneficiary of a retirement plan governed by ERISA may bring a civil action "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B). "Essentially, plaintiffs assert under this section a 'contractual right under a benefit plan.'" Devlin v. Empire Blue Cross & Blue Shield, 274 F.3d 76, 82 (2d Cir. 2001) (quoting Strom v. Goldman, Sachs & Co., 202 F.3d 138, 142 (2d Cir. 1999)).

Judicial review of a denial of ERISA benefits must be reviewed de novo, "unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989). If the administrator does have such discretion under the plan, a court may reverse the administrator's decision only if it is arbitrary and capricious. See id.; Roganti v. Metro. Life Ins. Co., 786 F.3d 201, 210 (2d Cir. 2015). A plan administrator's decision is arbitrary and capricious only if it was "without reason, unsupported by substantial evidence or

erroneous as a matter of law." Pagan v. NYNEX Pension Plan, 52 F.3d 438, 442 (2d Cir. 1995). The standard is "highly deferential," and "the scope of judicial review is narrow." Celardo v. GNY Auto. Dealers Health & Welfare Trust, 318 F.3d 142, 146 (2d Cir. 2003). "Substantial evidence is such evidence that a reasonable mind might accept as adequate to support the conclusion reached by the decisionmaker and requires more than a scintilla but less than a preponderance." Tansey v. Anthem Health Plans, Inc., 619 F. App'x 24, 25 (2d Cir. 2015).

Here the Plan grants the Plan Administrator "the primary responsibility and discretionary authority . . . to interpret [the Plan's] provisions, . . . to determine the amount of benefits which shall be payable to any person in accordance with the provisions of the Plan . . . [and] to consider and decide conclusively appeals by any claimant . . . ." Plan § 11.3. All "interpretations, determinations and decisions" with respect to any claim shall be made by the Plan Administrator "in its sole discretion based on the Plan and documents presented to it and shall be final, conclusive and binding." Id. § 11.9. Such language is sufficient to entitle Defendant to the deferential arbitrary and capricious standard of review. See Elizabeth W. v. Empire HealthChoice Assurance, Inc., 709 F. App'x 724, 726 (2d Cir. 2017) (finding sufficient that the plan granted the administrator the power to construe the plan's terms and decide all questions arising under the plan); Wegmann v. Young Adult Inst., Inc., No. 15 Civ. 3815 (KPF), 2018 WL 3910820, at *8 (S.D.N.Y. Aug. 14, 2018) (finding sufficient that the plan granted the power "to interpret the [p]lan, and to resolve ambiguities, inconsistencies and omissions" and to "determine the amount of benefits which shall be payable to any person in accordance with the provisions of the [p]lan").

Under either the arbitrary and capricious standard or the de novo standard, the Court would come to the same substantive decision.

C.  **Application**

The Court finds that the decision of the Plan Administrator was not arbitrary and capricious, and that it is correct as a matter of law. Plaintiff has received the full value of his accrued pension benefit under the Level Income Age 62 payment option he elected, ECF No. 26-4 at 326, and he does not argue otherwise. Under his chosen early-retirement option, Plaintiff receiving accelerated monthly pension payments beginning in October 2007, after he turned 55, and those payments continued until October 2014, when he turned 62, at which time his pension payments were reduced to $0.00 as his Social Security benefits became available to Plaintiff.[2] Id. Plaintiff now seeks to be paid his accrued pension benefit a second time in the form of a life annuity. In addition to finding no support from the August 2010 Agreement or November 2010 Agreement for the relief he seeks, such a double payout would impermissibly conflict with the controlling terms of the Plan. See Dillon Read Plan §§ 3.2, 6.4; UBS Plan § 6.3

A review of the August 2010 Agreement and November 2010 Agreement confirms the Plan Administrator's conclusion that neither agreement was intended to change Plaintiff's elected form of pension payment. The purpose of the August 2010 Agreement, as explained by the Plan Administrator, was to settle a claim raised by Plaintiff regarding notice of the merger of the Dillon Read Plan into the UBS Plan, and it provided for a lump sum settlement amount of $10,000.00 to be paid to Plaintiff. See August 2010 Agreement § 1(ii). Section (1)(i) of the August 2010 Agreement sets forth the "Dillon Read Benefit" to which Plaintiff is entitled under the Plan, describing it as: "[a]n annual pension benefit of $7,830.47, payable as a life annuity . . .

---

[2] The Plan terms clearly explained the nature and mechanics of the Level Income Age 62 Option, including the reduction of pension payments at age 62, potentially to zero, see Dillon Read Plan §§ 3.2, 6.4; UBS Plan § 6.3, and the September 2009 Letter explicitly informed Plaintiff that the payments would be reduced to $0.00 upon Plaintiff reaching the age of 62, see September 2009 Letter.

14

which commenced on October 1, 2007." Id. § (1)(i). The "Dillon Read Benefit", according to the August 2010 Agreement, "represents . . . [Plaintiff's] benefit entitlement under the UBS Pension Plan," and "reflects all benefits accrued by [Plaintiff] under the Dillon Read Pension Plan from [Plaintiff's] date of hire through the date benefit accruals were frozen under the Dillon Read Pension Plan on September 30, 1997." Id. Viewed in the context of the entire agreement, the textual purpose of defining Plaintiff's Dillon Read Benefit in Section (1)(i) was to set up Plaintiff's Compensation Calculation Claim in Section 4(a). See August 2010 Agreement § 1(i), 4(a); see also id., second "Whereas" clause (referring to "claims concerning the calculation and amount of [Plaintiff's] entire pension benefit"). Plaintiff pursued and resolved the Compensation Calculation Claim via the November 2010 Agreement.

Plaintiff's proffered interpretation of the August 2010 Agreement as vesting him with a new entitlement to a second pension benefit, to be paid for the remainder of his life, is not supported by the plain language of the agreement. See Seiden Assocs., Inc. v. ANC Holdings, Inc., 959 F.2d 425, 428 (2d Cir. 1992) ("In reviewing a written contract, a trial court's primary objective is to give effect to the intent of the parties as revealed by the language they chose to use . . . . When the question is a contract's proper construction, summary judgment may be granted when its words convey a definite and precise meaning absent any ambiguity . . . . The language of a contract is not made ambiguous simply because the parties urge different interpretations.").

Indeed, the August 2010 Agreement accurately states Plaintiff's accrued benefit of $7,830.47, and it specifically notes the date on which Plaintiff began receiving payments under

the Level Income Age 62 option (October 1, 2007).³ To the extent the August 2010 Agreement contained a misstatement in referring to payment "as a life annuity," this does this not support Plaintiff's claim for a new entitlement, and the superseding November 2010 Agreement confirmed there was no change in his benefit payment option. Compare August 2010 Agreement § 1(i) with November 2010 Agreement § 1(i). The November 2010 Agreement, about which there is no dispute as to its accuracy, is controlling as the last settlement agreement. See November 2010 Agreement § 16 ("This Agreement constitutes the whole agreement between the parties. Neither party has relied on any representations, promises, or agreements other than those contained in this document."). The November 2010 Agreement is enforceable for the same reasons the Plan Administrator found it enforceable; it was properly signed and initialed, and it stated the benefit and lump sum correctly. See Plan Administrator Decision at 320-21.

The relief requested by Plaintiff in this action would impermissibly conflict with the plain terms of the Plan, which is not permissible under ERISA. As set forth in this Court's prior decision dismissing Plaintiff's original complaint on the basis of ERISA pre-emption, the relief sought by Plaintiff, whether framed as a change to Plaintiff's election or a second payment of his pension, can only be derived directly from rights created by the Plan.⁴ Friedland v. UBS AG, No. 16 Civ. 687 (VMS), 2017 WL 6001769, at *3-5 (E.D.N.Y. Dec. 4, 2017); see Kelly v. Deutsche Bank Sec. Corp., No. 09 Civ. 5378 (JS) (ART), 2010 WL 2292388, at *1-2 (E.D.N.Y. June 3, 2010) ("[T]he great weight of authority holds that ERISA preempts common law claims

---

³ The commencement date for payments under the single life annuity form of payment would have been September 9, 2017, when Plaintiff turned 65.

⁴ That what Plaintiff seeks is an amended plan is confirmed by his submission of his initial claim and appeal to the Plan Administrator, as he construed his request as one for a payment under the Plan. See generally Plan Administrator Decision.

16

to enforce a settlement agreement relating to an ERISA-covered benefit plan."); Morlino v. Staten Island Univ. Hosp., No. 95 Civ. 3891 (NG) (SMG), 1998 WL 160937, at *9 (E.D.N.Y. Apr. 1, 1998) (finding claim for breach of separation agreement preempted where merits of the claim were contingent on the rights created by the ERISA plan); Cefalu v. B.F. Goodrich Co., 871 F.2d 1293, 1293 (5th Cir. 1989) (holding that ERISA pre-empted the plaintiff's state-law claim because "the damages would consist of the pension benefits [the plaintiff] would have received" had the contract not been breached). Under ERISA, a participant in a pension plan can "recover benefits due to him under the terms of his plan." 29 U.S.C. § 1132(a)(1)(B). "The statutory language [of ERISA] speaks of 'enforc[ing]' the 'terms of the plan,' not of changing them." CIGNA Corp. v. Amara, 563 U.S. 421, 436 (2011) (explaining that while ERISA § 502(a)(1)(B) "allows a court to look outside the plan's written language in deciding what [a] term[] [is], i.e., what the language means," it does not "authorize[ ] a court to alter [that] term[]"); Cefalu, 872 F.2d at 1296 (holding that oral modifications and informal written agreements to ERISA-governed plans are not enforceable; explaining that the purposes behind ERISA's formal writing requirement are to protect employees from having their benefits diluted by informal modifications and to protect the plan's actuarial soundness).

Under the Plan here, a participant can receive his or her accrued benefits in the form of a single life annuity commencing at normal retirement age, or, "in lieu" of that form of payment, can elect the alternative Level Income Age 62 Option form of payment. See Dillon Read Plan §§ 3.2, 6.4; UBS Plan § 6.3. The Plan does not permit the payment of a participant's accrued pension benefits under both options, and the private settlement agreements between Plaintiff and Defendant do not profess to be formal Plan amendments.

17

Plaintiff's arguments must be rejected, and the Plan Administrator's decision must be confirmed as not being arbitrary and capricious, and as proper as a matter of law.

### III. CONCLUSION

For the reasons set forth above, summary judgment is granted in favor of Defendant UBS AG. The Clerk of Court is directed to enter judgment in Defendant's favor and close the case. A copy of this Memorandum & Order will be mailed to <u>pro se</u> Plaintiff Barry Friedland at the address listed for him on the docket.

Dated: Brooklyn, New York
       March 14, 2019

*Vera M. Scanlon*
Vera M. Scanlon
United States Magistrate Judge
